ABRAHAM V. VAN FLEET AND JOHN T. BIRD, ESQS.,
VICE-CHANCELLORS.

---

THE UNION BRICK AND TILE MANUFACTURING COM-
PANY

*v.*

JACOB LORILLARD AND RACHEL VAN BUSKIRK.

1. Under *Rev. p. 637 § 5*, a married woman may contract to sell her real estate.

2. After her husband's death, specific performance of such a contract may be decreed.

3. Specific performance of such a contract will be decreed against one who purchases with knowledge of, and expressly subject to, the agreement.

---

On demurrer to bill for specific performance.

1

*Mr. William H. Vredenburgh,* for the complainant.

*Mr. Benjamin Williamson,* for the demurrants.

THE CHANCELLOR.

The bill alleges that, on March 24th, 1882, Rachel Van Buskirk leased to the complainant twenty-five acres of her farm, of about one hundred and forty acres, situate in Monmouth county, on the Raritan bay, for the term of twenty years and two months, from March 1st, 1882, at an annual rental of $500. The lease contained the following agreement:

"That the said company is to have the privilege of buying the aforesaid premises at any time within five years from the commencement of this demise, at the price or sum of seven thousand dollars, but such privilege is given upon the condition that all rent due is first paid, and the other agreements herein of said company first performed."

When the lease was executed, the lessor was the wife of Hiram Van Buskirk. The husband did not join in the instrument, but, at the foot of it, for valuable consideration, agreed, in writing, that if the lessee should determine to purchase the leased lands, he would join with his wife in a deed which would convey the property to the company.

Upon the execution of the lease the complainant took possession of the demised premises and erected thereon valuable buildings, and, upon the filing of the bill, still retained that possession.

Hiram Van Buskirk died in 1886, and, in February, 1887, his wife conveyed the entire farm to Jacob Lorillard, who is co-defendant with her in this suit. Following the *habendum* in the deed by which this conveyance was made, is a clause which provides that the conveyance is subject to two mortgages upon the property, and in the following language:

"And also subject to a certain lease, and agreement in said lease to convey a portion of the premises herein described and conveyed made by Rachel A. Van Buskirk and Hiram Van Buskirk, her husband, (dated March 24th, 1882), to The Union Brick and Tile Manufacturing Company, and recorded in Liber 345 of deeds for Monmouth county, page 494 &c., and subject to all the agreements and covenants in said lease contained."

It is not disputed that the bill makes it appear that within five years from the commencement of the demise the complainant, having performed the lease on its part, duly elected to buy the leased premises for the price agreed upon in the lease, and made proper tender and demand for a deed.

The bill prays that the defendants jointly, or that Jacob Lorillard alone, may be decreed to convey the leased premises to the complainant upon payment of the purchase money.

The defendants jointly demurred to the bill, and, upon the argument of the demurrer, insisted, as their ground of objection, that Mrs. Van Buskirk was a *feme covert* at the time the lease was executed, and, in consequence, had no legal power to bind herself by contract to convey the leased land, and that the defendant Lorillard, taking the land subject to such illegal agreement to convey, was not bound to perform that agreement. No question is raised upon the form of the agreement to convey. It is settled in this state that such a provision as that which is contained in the lease is tantamount to an agreement to convey the land. *Hawralty* v. *Warren, 3 C. E. Gr. 124; Lounsbery* v. *Locander, 10 C. E. Gr. 554.*

The question which was discussed is, whether a married woman can make a contract to convey her lands.

At law, before the Revision of 1874, such an agreement was clearly void, and, because of its illegality, courts of equity would not enforce it. *Wooden* v. *Morris, 2 Gr. Ch. 65; Pentz* v. *Simonson, 2 Beas. 232; Pierson* v. *Lum, 10 C. E. Gr. 390.*

The fifth section of the act to amend the law relating to the property of married women (*Rev. p. 637*), (*a*) at the time that Mrs. Van Buskirk's contract was made, authorized a *feme covert*

---

(*a*) *Rev. p. 637 § 5*—

That any married woman shall, after the passing of this act, have the right to bind herself by contract, in the same manner and to the same extent as though she were unmarried, and which contract shall be legal and obligatory, and may be enforced at law or in equity, by or against such married woman, in her own name, apart from her husband; *provided*, that nothing herein shall enable such married woman to become an accommodation endorser, guarantor, or surety, nor shall she be liable on any promise to pay the debt, or answer for the default or liability of any other person.

Union Brick and Tile Manufacturing Co. v. Lorillard.

to bind herself by contract, except as surety, in the same manner and to the same extent as though she were unmarried, and made such contracts legal, obligatory and enforcible at law or in equity against her, in her own name, apart from her husband. This statutory provision had its inception in the Revision of 1874, in the act last mentioned. Originating in the same statute, in its fourteenth section, (*b*) is the provision that nothing in that act contained shall enable any married woman to execute any conveyance of her real estate, or any instrument encumbering the same without her husband joining therein as theretofore, except in certain instances which are expressly mentioned in that statute. (*c*) Those instances are, where the husband is an idiot or a lunatic, or of unsound mind; where he is imprisoned in a state prison upon conviction for crime; where the husband or wife lives in a state of separation by virtue of a final judgment or decree of a court, and the like, but not where the husband and wife live together in full possession of their faculties. It is insisted that the fifth and fourteenth sections of this statute must be construed together so that they shall harmonize, and that the scope and design of

(*b*) *Rev. p. 639 § 14—*

That nothing in this act contained shall enable any married woman to execute any conveyance of her real estate, or any instrument encumbering the same, without her husband joining therein, as heretofore, except in those instances for which express provision is herein made; nor shall any conveyance, deed, contract or act of such married woman, nor shall any judgment or decree against her, in any respect impair or affect the right of the husband in her lands as tenant by the curtesy, after her death; nor shall anything herein enable husband or wife to contract with or to sue each other, except as heretofore.

(*c*) *Rev. p. 638 § 6—*

That any married woman whose husband may be an idiot, lunatic, or of unsound mind, or whose husband may be imprisoned in the state prison of this or any other state, upon conviction of any crime, or who is living in a state of separation from her husband, under and by virtue of the final judgment or decree of any court, may, at any time during the continuance of such idiocy, lunacy, unsoundness of mind, imprisonment or separation, sell, release, transfer and convey any interest, estate, or right that she may have in any real property, in the same manner and with like effect as if she were sole and unmarried; but such sale, conveyance or release shall not affect any estate or right that her husband may then have in such property.

the act is, that the fifth section shall be limited by the fourteenth section, so that the wife cannot contract to convey because she may not be able to secure the necessary joinder of the husband in the deed that must be given in performance of her contract.

While I perceive that a question may arise as to the power of the court to order the specific performance of a wife's contract to convey her land while her husband lives with her, in full possession of his faculties, and refuses to join in a conveyance, and refrains from doing any act which may give the court jurisdiction to compel him to join in a conveyance, I am decidedly of the opinion that, in virtue of the statute, the wife's contract is legal and binding upon her.

In *Sullivan* v. *Barry, 17 Vr. 1* (affirmed on error, *18 Vr. 339*), in which it was held that a married woman may make a lease for years without joining with her husband, Chief-Justice Beasley comments upon the statute that enables a married woman to contract, as follows : " The leading object of the statute is to give the married woman her property, both real and personal, as though she were a *feme sole*, and to clothe her with all the rights and authorities requisite for its possession, enjoyment and disposition, and it is indisputable that she is to have the exclusive use and benefit of her realty, as though she had no husband. The limitation upon this right is that she cannot convey it, nor can she put a mortgage or similar burthen upon it without the co-operation of her husband."

At the death of the husband, the limitation upon the execution of the contract by conveyance, and with it, the objection to a specific performance of the contract, is removed. I conceive that the only purpose of the limitation is to enable the husband to preserve from alienation a property of his wife in which he may acquire an estate. The possibility of such acquisition is extinguished at his death.

Prior to the complainant's exercise of its privilege to buy, Mrs. Van Buskirk sold the leased premises to Jacob Lorillard, by deed, in which he was distinctly notified of her agreement with the complainant, and by which he took the land subject to that agreement.

By virtue of the statute (*Rev. p. 167 § 80*) (*d*) the complainant is entitled to like advantage against Jacob Lorillard, touching the agreement contained in the lease that it had against Mrs. Van Buskirk, and, independently of the statute, specific performance of a contract will be decreed against a subsequent purchaser who buys with knowledge of the complainant's right (*New Barbadoes Bridge Co. v. Vreeland, 3 Gr. Ch. 157 ; Wadsworth v. Wendell, 5 Johns. Ch. 224*), and *a fortiori*, where the purchaser buys expressly subject to that right.

The demurrer will be overruled, with costs.

---

(*d*) *Rev. p. 167 § 80*—

All lessees of any lands, tenements or hereditaments, for a term of years, life or lives, their executors, administrators and assigns, shall have the like action and advantage against all persons and bodies politic and corporate, their heirs, successors and assigns, who have or shall have any gift or grant of the reversion of said lands, tenements or hereditaments so let, or any part thereof, for any condition, covenant or agreement, contained in the indentures of their lease or leases, as the same lessees, or any of them, ought or might have had against the said lessors and their heirs, all benefit and advantage of recoveries in value, by reason of any warranty in deed or in law, only excepted.