CHAS. J. SMITH COMPANY, Incorporated,

*v.*

MARY D. ANDERSON et al.

[Submitted June 4th, 1915.   Decided August 23d, 1915.]

1. In a lease of land for the life of the lessor, the lessee was given an option to purchase the land within one year after the death of the lessor. —*Held*, to be a conditional contract for the sale of the land, and enforceable against the devisees of the lessor.

2. An option given to a lessee to purchase the demised land after the death of the lessor, is contractual and not testamentary, in violation of the statute of wills.

3. An option to a lessee to purchase the demised land is not unilateral, and will be enforced in equity.

4. An agreement for an option to purchase land, in effect, is that the lessor will hold the land in reserve for the lessee during the stipulated period, and will convey it if and when the latter elects, and from this undertaking he cannot recede without the other's consent.

5. An option given to a lessee is a completed purchase of a right to have a conveyance if the purchaser shall choose to buy upon the terms named.

6. No estate in the land passes under a covenant for an option to a lessee to purchase, but the purchaser acquires such an inchoate right therein as will, pending the option period, be protected in equity, and upon his complying with the terms of the contract, his equitable estate thereby acquired will be clothed in legal form.

7. A covenant in a lease for an option to purchase relates to and runs with the land.

8. An option in a lease to purchase the land after the death of the lessor, *Held* to be properly exercised by tendering the money to one of the devisees.

9. *Quaere.* Is an option in a lease to purchase land exercisable only after the death of the lessor, a conversion of the realty from the date of the option? *Lawes v. Bennet, 1 Cox Ch. 166*, criticised.

10. An option in a lease to purchase lands, is property, which may be transferred and enforced by the assignee.

On demurrer to bill.

*Mr. John F. Reger,* for the complainant.

*Mr. Maximilian T. Rosenberg,* for the defendants.

BACKES, V. C.

The object of this bill is to specifically enforce a contract for an option to purchase land exercisable only and exercised after the death of the optioner. The bill is met by a demurrer.

The complaint sets forth this history: On July 1st, 1899, by an indenture of lease, Eliza H. Annin demised to Alvina T. Anderson for and during the natural life of the lessor, at a yearly rental of $400, a coal and lumber yard, consisting of two tracts of land in the borough of Somerville in this state.. The lease stipulates for the removal of tenant's buildings, the payment of taxes, the effecting of fire insurance, and then provides as follows:

"In consideration of the above agreement to be performed by the said party of the second part and of the further sum of one dollar and other good and valuable consideration in hand paid to the said party of the first part, the said party of the first part for herself, her heirs, executors, administrators and assigns doth hereby covenant and agree to and with the said party of the second part, her heirs, executors, administrators and assigns, that the said party of the second part at the expiration or termination of this lease and within one year thereafter shall have the privilege of purchasing from the estate of said party of the first part said lands and premises hereinbefore leased and rented to her for the sum of $4,000 and the said party of the first part doth hereby authorize, direct and empower her heirs or executors to convey to the said party of the second part by a good and sufficient deed the hereinbefore described premises free from all encumbrances at the price of $4,000 aforesaid."

On May 1st, 1902, Alvina T. Anderson assigned the lease to Charles J. Smith and Selah H. Schoonmaker, who formed the Smith-Schoonmaker Company, and to it the lease was transferred. The lessor consented to the assignments, and the assignees attorned to her until she died on January 2d, 1913, leaving a will, the fifth clause of which reads:

"Fifth. All the rest, residue and remainder of my estate, real and personal I give, devise and bequeath unto my son Alexander G. Anderson and my daughter-in-law Mary D. Anderson share and share alike to have and to hold their heirs and assigns forever."

Alexander G. Anderson, one of the residuary devisees, and a daughter, R. Mary Anderson, were nominated and qualified as executors. No power of sale was given by the will. Within a few months after the death of the lessor, the Smith-Schoonmaker Company gave notice to the executors of the acceptance of the option, and paid to them the purchase price and received an executor's deed under date of February 25th, 1913. Schoonmaker, one of the principal owners of the company, retired and Smith formed the Chas. J. Smith Company, Incorporated, the complainant, to whom the premises were conveyed on January 6th, 1914. From the time of the making of the lease to the present time, the lessee and the respective assignees have carried on the coal and lumber business on the premises, and during the existence of the tenancy, and relying upon the privilege and option of purchasing the same at the death of the lessor, they enlarged the planing mill thereon and installed therein new and improved machinery and made other valuable and permanent improvements. After the delivery of the executor's deed, the grantee and the complainant made other valuable and permanent improvements upon the premises and exercised complete ownership and control thereover, without notice of any adverse claim, until February, 1915. On the twenty-seventh of that month Mary D. Anderson, one of the two devisees mentioned in the residuary clause of the will of the lessor, commenced an action in ejectment against the complainant in the supreme court to recover possession of an undivided half part of the land, in which issue has been joined. In that action the complainant cannot successfully defend, because the will of the lessor did not confer upon the executors power to convey lands; the deed of the executors is inefficacious and hence 'the legal title will be held to be in the residuary devisees under the will. By an amendment the complainant further sets forth that Mary D. Anderson knew that the will of the lessor did not confer a power of sale upon the executors, and with this knowledge permitted the complainant's grantor to expend large sums of money in making improvements upon the lands without giving notice that she would dispute the provisions of the option; that she recognized the rights of the complainant's grantor to purchase the premises,

and requested the executors to proceed with the settlement of the estate as speedily as possible, and to get from the complainant's grantor the purchase price, so that the same might be in the hands of the executors and ready for distribution at any time; that she was cognizant of the payment by the complainant's grantor of the purchase price and of the delivery to it by the executors of the deed of conveyance, and that thereafter, and for a period of two years next before the commencement of the suit, she permitted the complainant and its grantor to make valuable repairs and improvements to the premises, and to purchase and acquire additional land adjoining to enlarge their business, and that, therefore, she is estopped from now asserting her title. The bill prays that Mary D. Anderson may be perpetually enjoined from further prosecuting her suit; that the covenant to convey the lands may be specifically performed, and that the devisees may be decreed to execute and deliver to the complainant a good and sufficient conveyance in the law. Seven grounds of demurrer are specified.

The first is that the option is not a contract, but is in the nature of a testamentary disposition, and not having been executed in the manner provided by our statute of wills is void. By the covenant the lessor bound herself, her heirs and assigns, to sell the land for a fixed price if called upon to do so by the lessee within a stated time. Such covenants, based upon the consideration of the terms of the lease, are constantly enforced in equity. *Hawrally* v. *Warren, 18 N. J. Eq. 124.* The agreement, in effect, was that the lessor would hold the land in reserve for the tenant during the stipulated period, and would convey it if and when the latter elected, and from this undertaking she could not recede without the other's consent. In *McCormick* v. *Stephany, 61 N. J. Eq. 208,* it was held that such an agreement to convey is not a mere unaccepted proffer based upon no consideration, as is a letter offering to sell, nor is it a naked promise to sell at a price within a limited time. It is a completed purchase of a right to have a conveyance if the purchaser shall choose to buy upon the terms named. *Myers* v. *Metzger, 61 N. J. Eq. 522; Connely* v. *Haggarty, 65 N. J. Eq. 596.* While no estate in the

land passes under the covenant, yet the purchaser acquires such an inchoate right therein as will, pending the option period, be protected in equity; and upon his complying with the terms of the contract his equitable estate thereby acquired will be clothed in legal form. The covenant relates to and runs with the land. *21 Am. & Eng. Encycl. L. 935.* By the terms of the covenant under discussion it is made binding upon the heirs and assigns of the lessor, and under her will the legal title to the land is in the devisees and impressed with the lien of the covenant, which became enforceable against them upon the exercise of the option. From that time on they held the premises in trust for the complainant and its predecessor in title. The fact that the agreement to convey upon condition was to be executed posthumously is no barrier to its enforcement and does no violence to the statute of wills. It is settled that a person may agree to make a particular disposition of his property by last will, and, upon breach, equity will enforce the promise. Such a contract was upheld on demurrer in *Johnson* v. *Hubbell, 10 N. J. Eq. 332,* wherein Chancellor Williamson said:

"There can be no doubt but that a person may make a valid agreement binding himself legally to make a particular disposition of his property by last will and testament. The law permits a man to dispose of his own property at his pleasure, and no good reason can be assigned why he may not make a legal agreement to dispose of his property to a particular individual, or for a particular purpose, as well by will as by a conveyance to be made at some specified future period or upon the happening of some future event. It may be unwise for a man, in this way, to embarrass himself as to the final disposition of his property, but he is the disposer, by law, of his own fortune, and the sole and best judge as to the time and manner of disposing it. A court of equity will decree the specific performance of such an agreement upon the recognized principles by which it is governed in the exercise of this branch of its jurisdiction. In the case of *Rivers* v. *The Executors of Rivers, 3 Des. Rep. 195,* the court, in sustaining the propriety of a court of equity's recognizing and enforcing such an agreement, very properly remarked that a man might renounce every power, benefit or right which the

686 CASES IN CHANCERY, 1915.

Chas. J. Smith Co. *v.* Anderson. *84 N. J. Eq.*

laws give him, and he will be bound by his agreement to do so, provided the agreement be entered into fairly, without surprise, imposition or fraud, and that it be reasonable and moral." See, also, *Young* v. *Young, 45 N. J. Eq. 27; Clawson* v. *Brewer, 67 N. J. Eq. 201; Synge* v. *Synge (1894), 1 Q. B. 466; Meck's Appeal, 97 Pa. St. 313.* And a court of equity will intervene to prevent attempts on the part of the promisor to violate his promise during his lifetime. *Van Duyne* v. *Vreeland, 12 N. J. Eq. 142; Davison* v. *Davison, 13 N. J. Eq. 246; Pflugar* v. *Pullz, 43 N. J. Eq. 440; Duvale* v. *Duvale, 54 N. J. Eq. 581.* Now, if an agreement to devise by a will is legally binding and enforceable, it cannot be logically reasoned that a contract to convey after death is obnoxious to, and in contravention of, our statute of wills. The covenant is in no sense testamentary. It is contractual and irrevocable, and not benefactory and ambulatory, which are distinguishing features of wills.

The authorities which have been cited by the demurrant's counsel in support of the text of the specification now under consideration, are cases in which donative purpose is the chief characteristic, and in which the element of contract is wholly absent or only incidentally involved. They are not in point. *Heaston* v. *Krieg, 167 Ind. 101; In re Diez, 50 N. Y. 88; Hester* v. *Young, 2 Ga. 31; Blackstock* v. *Mitchell, 67 Ga. 768; Castor* v. *Jones, 86 Ind. 289; Reed* v. *Hazleton, 37 Kan. 321; Armstrong* v. *Armstrong, 51 Tenn. 357; Graves* v. *Sheldon, 2 Chip. D. (Vt.) 71; Remer* v. *Benedict, 81 N. J. Eq. 21; Cross* v. *Cross, 115 Eng. Reps. (Reprint) 1041.*

The three following specifications raise the single point that the option was not properly exercised, because the purchase-money was paid to the executors instead of the devisees of the lessor. The option is silent as to whom the money was to be paid. The complainant's counsel contends that the contract of option worked a conversion of the realty into personalty upon acceptance, and that the payment to the executors was obviously proper and a fulfillment of the condition. In *Lawes* v. *Bennet, 1 Cox Ch. 166,* it was held that an option, exercised after the death of the optioner, converted the realty as of the time the option was given, and that it was to be regarded as personalty,

to be dealt with by the executor. In that case the option could have been exercised in the lifetime of the vendor, and in this respect differs from the case in hand. *Lawes* v. *Bennet* was cited with approval in *Keep* v. *Miller, 42 N. J. Eq. 100.* It was disapproved in *Rockland-Rockport Lime Co.* v. *Leary, 203 N. Y. 469,* and *Smith* v. *Loewenstein, 50 Ohio St. 346.* In England it has been criticised, and, although followed and applied, it has not been extended beyond litigation between heirs and personal representatives. *In re Adams and the Vestry of St. Mary Abbotts Kensington, 54 L. J. Ch. 87.* I do not regard the rule of *Lawes* v. *Bennet* as unacceptable, and, if it were necessary to invoke it in order to sustain the complainant's title, I would be inclined to apply the doctrine, because the chief reasons for its rejection, that it would lead to serious inconvenience and embarrassment in the settlement of estates and to complications concerning title to land, attendant upon a long-deferred conversion, are not present in this case. Here, the election was to take place within one year (the period for the settlement of decedents' estates), and I fail to see how any difficulty could be, or has been, experienced. The doctrine of equitable conversion rests upon the presumed intention of the owner of the property, and in this case the intention may reasonably be inferred from the circumstances. The decision of the present point does not, however, depend upon the correctness of the doctrine of *Lawes* v. *Bennet,* because here one of the executors, to whom the purchase-money was tendered, and with whom the condition of the covenant w asperformed, is one of the two devisees. The declaration of acceptance of the option to either of the devisees was a sufficient performance of the condition. *Harr. L. Tend. 115.* The fact that this devisee was also an executor, and in that capacity executed a deed in mistaken compliance with the terms of the option, does not militate against the propriety of the tender. Moreover, it appears by the bill that the militant defendant Mary D. Anderson requested her co-devisee, one of the executors, to obtain the money due on the option. If this be true, and it must be so regarded upon demurrer, then she appointed her co-devisee her agent, to receive the tender of the money.

Another specification is that the option was not assignable, and that the complainant's grantor was not entitled to exercise it. This proposition is not tenable. The contract, with a lessee for an option to purchase, based upon the consideration of the lease, is property, and as such is transferable. *Napier* v. *Darlington, 70 Pa. St. 64; Albert Brick, Lime and Cement Co.* v. *Nelson, 27 N. B. 276; Gustin* v. *School District, 94 Mich. 502; Robinson* v. *Perry, 21 Ga. 183; Van Horne* v. *Crain, 1 Paige 455; Hager* v. *Buck, 44 Vt. 285; McCormick* v. *Stephany, supra.*

The next ground of demurrer is that there is a variance between the description of the property alleged to have been leased and upon which the option was to operate, and that for which the action in ejectment has been brought. All that need be said as to this is that the bill alleges that they are one and the same, which must be accepted as true. A copy of the lease is attached, and, upon a comparison of the description of the land therein with the amplified description thereof in the bill, it cannot be said that they are not one and the same. If the complainant is claiming more land than was contracted for, the issue must be raised by answer and established on final hearing.

The bill also sets up an estoppel, which is challenged by the demurrer. The foregoing view renders it unnecessary to express an opinion upon the point. It may, however, not be out of the way to suggest that it does not appear by the bill that the request of the demurrant Mary D. Anderson, that the executors of the lessor accept the purchase price, came to the notice of the complainant's grantor and that it was relied and acted upon by it.

The demurrer will be overruled. The complainant is entitled to a decree, with costs.