McClung Drug Company, a corporation,

*v.*

City Realty and Investment Company, a corporation, et al.

[Submitted October 17th, 1919. Decided October 28th, 1919.]

1. A purchaser of premises in the possession of a lessee, having knowledge of the lease, is chargeable with notice of an option of purchase therein.

2. An option to buy, in a lease, is unenforceable if the price is not named, and no standard is established by which the price may be determined with certainty.

On bill, &c.

*Messrs. Wight, Wight & Golenbock (Mr. Merritt Lane* of counsel), for the complainant.

*Mr. Thomas Brown* and *Mr. Leo Goldberger*, for the defendants.

BACKES, V. C.

This bill is for the specific performance of an option contained in a lease to purchase land. The struggle for the property is due chiefly to its recent increase in value. The City Realty and Investment Company leased to the McClung Drug Company's assignor the ground floor of No. 198 Smith street, Perth Amboy, to be occupied as a general drug store, for the term of six years from the 1st day of August, 1915, and stipulated:

"That should the party of the first part decide to place this property on the market for sale, then the said party of the second part shall be given thirty (30) days' notice, in writing, of such intention with the privilege of purchasing same within said thirty days."

The realty company decided to sell, and to that end its board of directors formally resolved "that Jefferson Building be placed on the market for $32,000." Thereafter a real estate agent retained by it tried to negotiate a sale with the drug company, but it was not ready to buy. The drug company had no knowledge of the resolution.

On May 2d, 1919, the realty company sold the property to the defendants Greenspan and Borak for $34,000, and three days later it sent a letter to the drug company saying: "If you care to buy the Jefferson Building, No. 198 Smith street, kindly advise us at once, as we have an offer." Within thirty days the drug company verbally notified the realty company that it exercised its option and would give $34,000, which was ignored, and the property was conveyed to Greenspan and Borak. They had knowledge of the lease but not of the option. They are, however, chargeable with notice of all the lease contains; and further, as the drug company was in possession, reasonable in-

218    CASES IN CHANCERY, 1919–1920.

McClung Drug Co. v. City Realty & Invest. Co.    91 N. J. Eq.

quiry would have brought forth the information. *Hoy* v. *Bramhall*, *19 N. J. Eq. 563; Vredenburgh* v. *Burnet, 31 N. J. Eq. 229.*

The question for decision is, Is the option a complete contract and enforceable in view of the statute of frauds? It seems to me the answer must be in the negative, as there was no price stipulated and no method provided for its ascertainment.

It is familiar law that equity will not specifically enforce a contract for the sale of lands unless it is conclusive and certain as to parties, the subject-matter, the price and the terms. Some of the cases in this state are: *McKibbin* v. *Brown, 14 N. J. Eq. 13; Welsh* v. *Bayaud, 21 N. J. Eq. 186; Domestic Telegraph Co.* v. *Metropolitan Telephone Co., 39 N. J. Eq. 160; Woodruff* v. *Woodruff, 44 N. J. Eq. 349; Schenck* v. *Spring Lake Beach Improvement Co., 47 N. J. Eq. 44.* It is not necessary that the price be specified in figures or words at length. It is sufficient if a standard is established by which the price may be determined with certainty; as, for instance, the "fair value" or "market value" (*VanDoren* v. *Robinson, 16 N. J. Eq. 256*), or at a price offered by another upon a certain event, and accepted (*Race* v. *Groves, 43 N. J. Eq. 284; Hayes* v. *O'Brien, 149 Ill. 403*), or the appraisal of arbitrators. *Woodruff* v. *Woodruff, supra.* Complainant's counsel rely for authority altogether upon the remark of Vice-Chancellor Bird in *Race* v. *Groves,* and the opinion of the supreme court of Illinois in *Hayes* v. *O'Brien.* I think the options in those cases are easily distinguishable in principle, in that each of them defined the price to be the amount of a future accepted offer from another. No provision of that kind is contained in the complainant's option. All the drug company got by it was the exclusive privilege, for thirty days, of buying if the realty company decided to sell. It is not implied that the realty company was to fix a price at which it would sell to the drug company, for it is common practice to put property on the market awaiting proposals. Nor can it be read into the option that upon the realty company's determination to sell, and a price being fixed, it was to be unalterable and final; nor that the price was to be the accepted offer of another; nor that it was to be the reasonable value, as the complainant's

counsel contend. Any of these factors of definiteness, properly stipulated upon the contingency of an offer of sale, would have supplied the required certainty, according to the authorities. A simple illustration of the incompleteness of the contract is, that the option would be spent by the giving of a notice that the property was for sale, without more, and the lapse of thirty days.

It is not the privilege of the court to piece out the option into a complete contract by seizing upon the resolution to sell for $32,000, or the selling price to Greenspan and Borak of $34,000, as the sum for which the realty company were, or ought, to sell to the complainant. That would be a juridical interpolation of an essential of the contract upon which the minds of the parties had not met, at least not at the time the option was granted; and it is of that period that it must speak. In *Fogg* v. *Price, 145 Mass. 513,* the supreme court of Massachusetts had before it an option substantially like the one in this suit. I quote at length from the opinion of Judge Holmes for the better expression of my views. He says:

"The covenant is: 'If the premises are for sale at any time, the lessee shall have the refusal of them.' This is simply an agreement to give the lessee the first chance to make a contract —an agreement to sell if the parties can agree, but not otherwise. It neither fixes the price nor provides any way in which it can be fixed. Suppose that the premises had been advertised for sale, and that the tenant had brought his bill at once, it is plain that the court could not have named any sum at which the lessor should be compelled to sell. Considered, therefore, in the light of a contract to sell, as it is treated by the bill, it does not satisfy the statute of frauds, and, apart from the statute, it is not such a contract as equity can specifically enforce. *Pray* v. *Clark, 113 Mass. 283; Grace* v. *Denison, 114 Mass. 16; Gelston* v. *Sigmund, 27 Md. 334; Abeel* v. *Radcliff, 13 Johns. 297; Bromley* v. *Jefferies, 2 Vern. 415.*

"It may be that the contract does mean that the lessor will deal with the lessee, on the same terms as with anyone else, or at least will not discriminate against him; that the lessor has now fixed his price by a sale; and that, as the purchaser had notice

of the contract, the defendants have removed the difficulties in the way of specific performance by their own conduct. It might be that the remedy would do substantial justice as against the lessor, but, in order to do it, a term would have to be added which is not in the contract. The contract certainly does not contemplate a sale to somebody else as a mode of ascertaining the price at which the lessor will sell to the lessee. *Bromley* v. *Jefferies, ubi supra.* The statute of frauds remains unsatisfied, notwithstanding what has happened. It is not the event but the nature of the contract which is to be considered, and that must be determined by looking at it as it stood at the time it was made. See *Stapilton* v. *Stapilton, 1 Atl. Rep. 2, 10; Walton* v. *Coulson, 1 McLean 120; Moore* v. *FitzRandolph, 6 Leigh 175, 186.*"

The bill will be dismissed, with costs.