[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 321 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 322 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 323 
The remedy sought to be achieved by the plaintiff in this action is a final judgment requiring the defendants or those of them having reversionary estates therein to convey to him certain lands and premises designated as No. *Page 324 
1984 Greenwood Avenue, in the Township of Hamilton, Mercer County. The basic contractual engagement upon which the alleged cause of action depends is evidenced, it is said, by a lease executed on February 28, 1946, by Frederick H. Arend, Sr., and Laurina A. Arend, his wife, as lessors, and by the plaintiff and one Leo R. Newmark, as lessees.
A variety of defenses has been interposed, the pertinency and consideration of which necessitate the following background of information. During the period of 1923 and 1925 inclusive Frederick H. Arend, Sr., acquired by purchase three contiguous parcels of land in Hamilton Township which he associated in the pursuit of the business of operating a gasoline station and the maintenance and repair of automotive vehicles until the year 1942, at which time he retired. In 1945 he vested the title of the premises in himself and his wife, Laurina A. Arend, as tenants by the entirety.
On February 28, 1946, he and his wife agreed in writing to let unto the plaintiff and Leo R. Newmark:
"ALL THAT CERTAIN LAND AND PREMISES KNOWN AS 1984 GREENWOOD AVENUE, IN THE TOWNSHIP OF HAMILTON, COUNTY OF MERCER AND STATE OF NEW JERSEY, together with the full amount of the land the use, occupancy and for the privilege of sub-letting the garages in the rear except one garage to be the exclusive use of the owner or his family or anyone else that he may choose to occupy same, and the lower grade floor of the Main building all for the purposes of continuing service station for automobiles, sale ofassessories, gas and oil or any other articles chosen by the tenants to further the business desired by the tenants. It should not be construed and neither is it intended that the second floor apartment shall be included in this lease. It is not intended that the use of the basement is to be included in this lease. It is intended however that the tenants has (sic) the right to the use of all gas and oil tanks if any under the surface of the ground and the use of the pumps for gasoline and oil if any, now in storage of the landlord."
The lease also embraces terms which should be quotedliteratim:
"The term of this lease is to be for three years commencing, the first day of May 1946 and ending the 30th day of April 1949, at five o'clock in the afternoon of that day at the yearly rental of Thirteen hundred twenty dollars ($1320.00), payable one hundred ten dollars ($110.00) monthly in advance and due on the first day of each month. *Page 325 
"Be it hereby known and acknowledged by all parties concerned that the eleven hundred dollars ($1,100.00) which has already been paid at the time of the drawing of this lease, by the tenant to the landlord, who does hereby acknowledge that he has received this eleven hundred dollars ($1,100.00) for the following purposes (first) it is to be used for the payment of the last ten months of rent of the three year period of this lease, it shall in no way be construed to be used for any portion of the first twenty-six (26) months rent within the terms of this lease. (secondly) if at any time during the three year period and providing the rent is paid within the meaning of this lease the tenant and either of them decides to purchase the said premises then this eleven hundred dollars ($1,100.00) may be used and considered as an initial and down payment on the purchase price thereof providing satisfactory terms for the payment of the balance of the purchase price can be arranged. The sale price agreed upon between all parties concerned is to be fourteen thousand three hundred dollars ($14,300.00) which is to include all real estate with the present description of these premises together with the tanks herein mentioned and the pumps herein mentioned."
On May 8, 1946, the lessor, Frederick H. Arend, Sr., died and in the following year Laurina A. Arend, the surviving tenant by the entirety conveyed the demised premises to her son, Frederick H. Arend, Jr., and to her daughter Lillian A. Drake. It is acknowledged that from the inception of the lease Frederick H. Arend, Jr., has acted as the agent of the lessors and owners in the collection and receipt of the rent.
On June 29, 1946, the lessee Leo R. Newmark by an instrument executed and acknowledged in writing assigned all of his "rights" in the demised premises or "any part thereof" to the plaintiff.
By written notices under dates of April 12, 1948, and May 29, 1948, the plaintiff notified all persons having any reversionary interest or estate in the demised premises of his election to exercise the option to purchase the property for the agreed purchase price. The defendants decline to convey.
Contracts ought to be interpreted according to that meaning which is distinctly discernible to persons of common sense and understanding and not too submissively to profound legalistic processes which may in a practical adaptation distort and perhaps frustrate the genuine intentions of the parties. Mantell v.International Plastic Harmonica Corp., 141 N.J. Eq. 379,55 Atl. (2d) 250. *Page 326 
Too often the vendor so zealous to sell at breakfast recants at supper time, and eventually the court is confronted by either some abstruse and sophistical or some capricious issues, initially unimagined by the contracting parties. Unless the transaction is unconscionable, it is not the eligible function of the court to liberate those who apprehend that they have engaged in a bad bargain.
Here the plaintiff stands ready to pay the entire purchase price of $14,300 in cash. The defendants have filed an answer augmented by eight separate defenses and also a counterclaim for the forfeiture of the lease. I shall allude to the several defenses.
It is now proposed that the right of the plaintiff to exercise the option to purchase was forfeited by the subletting by the plaintiff of portions of the demised premises to others without the written consent of the landlords in violation of the terms of the lease. It is evident from the stipulated facts that the defendant Frederick H. Arend, Jr., who has since the inception of the term of the lease acted as the acknowledged representative of the landlords in the supervision of the demised premises and in the collection of the monthly instalments of rent from the plaintiff, has at all times had actual personal knowledge of the occupancies of the subtenants, has refrained from interposing any objection to such tenancies, and has continuously collected and accepted the rent from the plaintiff. Acquiescence is plainly inferential. In that regard I attach some significance to the circumstance that no protest against such subletting was made by or on behalf of the landlords until they received notice of the intention of the plaintiff to exercise the option to purchase the premises.
Such a course of conduct on the part of the landlords with cognizance of the facts evinces a waiver of the breaches of the covenant and a ratification of the departure from the pertinent negative provision in the lease. Garbarine v. Reade,95 N.J. Eq. 495, 123 Atl. 164; Brower v. Bd. of Comm'rs, AsburyPark, 103 N.J. Eq. 176, 142 Atl. 648; Orange Motors v.Meyer, 107 N.J. Eq. 461, 149 Atl. 811; North v. JerseyKnitting Mills, 98 N.J. Law 157, 118 Atl. 840. *Page 327 
Thoughtfully scrutinizing the language of the lease pertaining to the option to purchase, I am convinced that there was upon the execution of the instrument a consensus of minds among the parties enveloping the essential elements and requisites of an immediate bargain, the material terms of which, except in the one particular hereinafter discussed, are reasonably definite. Of course, options uniformly have a prospective character.
The defendants aver that the option is deficient in that the designation of the premises is indefinite. The demised premises are described in the lease as "all that certain land and premises known as 1984 Greenwood Avenue, in the Township of Hamilton, County of Mercer and State of New Jersey, together with the full amount of the land * * *" "which is to include all real estate with the present description of these premises * * *" Moreover the plaintiff, except for the stated reservations for the use of the landlords, has been in actual possession of the premises since 1946.
Reasonable certainty in the ascertainment of the lands agreed to be conveyed is all that is required. Bateman v. Riley,72 N.J. Eq. 316, 73 Atl. 1006. A description evidenced merely by a street number may in view of the surrounding circumstances be sufficiently definite to identify the land. Riley v. Hodgkins,57 N.J. Eq. 278, 41 Atl. 1099; Claphan v. Barber,65 N.J. Eq. 550, 56 Atl. 370; Franklin v. Welt, 98 N.J. Eq. 602,131 Atl. 585: Bernstein v. Rosenzweig, 62 Atl. (2d) 147. I recall a specific performance suit in which the property was described in the contract as the "fifth house from the corner."Friedman v. Gold, 105 N.J. Eq. 177, 147 Atl. 377. It seems to have been contemplated that "the present description of these premises" (deed descriptions) would be ascertained aliunde.
There is no uncertainty concerning the identification of the premises to which the option is intended to apply.
Obviously the exercise of the option pursuant to its terms and conditions comprehended a sale of the demised premises. I quote, "The sale price agreed upon between all parties concerned" is $14,300. (Underscoring mine.) It was understood *Page 328 
that the deposit of $1,100 primarily to be held as security for the payment of rent would be "used and considered as an initial and downpayment on the purchase price." The language pertaining to the payment of the balance is, "providing satisfactory terms for the payment of the purchase price can be arranged."
The plaintiff offers to pay the balance in cash. The defendants arbitrarily refuse to convey on any terms whatsoever. In the circumstances of the present case, can the option be specifically enforced?
I am aware that ordinarily where the time and terms of payment of the purchase price in pursuance of an agreement for the sale of land are manifestly deferred for subsequent negotiation, a material element of the contract is in suspense and specific performance will not be decreed. Brown v. Brown, 33 N.J. Eq. 650.
In the present action I have a case in which the plaintiff waives all terms of credit, offers to pay in cash and, most significantly, his complaint expressly presents that issue for determination.
I distinguish the present agreement from one in which the granting of credit in the form of an interest-bearing note or mortgage is patent. I distinguish this action from those in which specific performance is sought upon such terms of credit as the court shall deem reasonable and just. Cf. McKibbin v. Brown,14 N.J. Eq. 13, 18, affirmed 15 N.J. Eq. 498.
It is the propensity of a court of equity to bring about that result which is conformable to the wholesome principles of morality, fairness, and justice in the circumstances of the particular case. Here the lessors let the demised premises for a consideration which embraced the opportunity of the lessees to buy the premises. Was it the subtle intention of the lessors at the time of the composition and execution of the lease arbitrarily to refuse either to accept cash or to agree to any terms of payment of the option price in the event that the option should be exercised? I think not. The plaintiff has protected his option by promptly paying the monthly rent and *Page 329 
the lessors have regularly accepted the income. The plaintiff has now established his business on the demised premises and has notified the defendants of his exercise of the option. The defendants have the "down payment." In response to his notice the defendants expressed their refusal to convey upon the sole
ground that the plaintiff had sublet portions of the premises without written consent. The other defenses have since been congregrated.
In the circumstances of the present controversy, I am constrained to resolve that where, as here, the language of the agreement relative to the terms of payment of a specified purchase price does not disclose an intention that credit in some form secured by some income-producing obligation is to be given, and where, as here, the vendee in his complaint expressly waives all credit and offers to pay cash, the defense that the agreement in the particular mentioned is incomplete and too indefinite to be enforced is untenable. I have in the interest of justice in this case decided to follow the conviction of Vice-Chancellor Leaming appearing in Binns v. Smith, 93 N.J. Eq. 33 (on p.
36), 115 Atl. 69, and adopted in Levine v. LafayetteBuilding Corp., 103 N.J. Eq. 121, 137, 142 Atl. 441, reversed on other grounds, 105 N.J. Eq. 532, 148 Atl. 772.Vide, Swedish-American Nat'l Bank v. Merz, 179 N.Y.S. 600;Morris v. Ballard, 16 Fed. (2d) 175.
I am not inclined to acknowledge unqualifiedly that my ruling on this point is necessarily to be regarded as at variance with the abundant authorities holding that ordinarily the time and terms of payment constitute a material element of such contracts. I think it may with reason be said that the phrase in this agreement obviously does not exhibit that the balance of the purchase price was intended by the parties to be paid in any particular style, or mode, or in money, property or services. The law implies that money is to be the medium of payment. Where as here a particular manner and method of payment have not been agreed upon, and all the other essential and material elements of the agreement are present, the proffer of the balance of the purchase price, in cash, made obligatory upon the plaintiff by the allegations of the complaint, leaves nothing *Page 330 
of real substance lacking in the compact. N.E.D. Holding Co. v.McKinley, 157 N.E. 923, 246 N.Y. 40 (Cardozo, C.J.).
Next to be observed in the procession of defenses is the insistence that the option agreement is not obligatory upon the defendants as grantees of the lessors. This contention is frivolous. Consult R.S. 46:8-3, N.J.S.A.; Union Brick and TileMfg. Co. v. Lorillard, 44 N.J. Eq. 1, 13 Atl. 613; Chas. J.Smith Co., Inc. v. Anderson, 84 N.J. Eq. 681, 95 Atl. 358;McClung Drug Co. v. City Realty, c., Co., 91 N.J. Eq. 216,108 Atl. 767, affirmed 92 N.J. Eq. 237, 111 Atl. 926.
The lease was executed on February 28, 1946, and the defendant Frederick H. Arend, Jr., married the defendant Helen R. Arend on August 14, 1946. The defendants assert that the option is subordinate to the inchoate right of dower of Helen R. Arend. The fact is that the husband acquired title to the demised premises subject to the subsisting and superior equity therein of the plaintiff. It is a well established principle that a contract for the sale of land belonging to the husband, made by him before marriage, takes precedence of the dower rights, and consequently the widow cannot claim dower as against the purchaser. 1Tiffany, Real Property (2d ed.) § 223, p. 774; 19 C.J."Dower" 514, § 158; Detwiler v. Capone, 357 Pa. 495,55 Atl. (2d) 380; Mineral Development Co. v. Hall, (Ky.)
115 S.W. 230.
A woman who by her marriage acquires no interest in property which her husband had theretofore contracted to convey is, nevertheless, properly made a party to a suit by the purchaser for specific performance, since, although no action by her is required by the final judgment, the court in its discretion may enjoin her from asserting any interest by virtue of her marriage.Detwiler v. Capone, supra.
Next, although it is acknowledged that the defendants received notices in writing of the intention of the plaintiff to avail himself of the option, the defendants nevertheless declare that the notices were inadequate. Not so. Copies of the notices are attached to the complaint. The parties are presumed to have contemplated a reasonable period of time for the preparation of the conveyance and an inquiry into the state of the *Page 331 
title. Martindell v. Fiduciary Counsel, Inc., 133 N.J. Eq. 408,30 Atl. (2d) 281.
There is yet another averment of the answer. It impugns the adequacy of the assignment of the co-tenant Newmark. In the light of the circumstances surrounding its composition, I regard the writing as intended to be legally operative to transfer to the plaintiff all of the leasehold interest of the assignor in the demised premises and in the covenants of the lease.
In the absence of some negative covenant or provision, a lease and option are as assignable as any other contractual right, and an action for specific performance is maintainable by the assignee. Tantum v. Keller, 95 N.J. Eq. 466, 123 Atl. 299, affirmed 96 N.J. Eq. 672, 126 Atl. 925; South JerseyFurniture Corp. v. Dorsey, 95 N.J. Eq. 530, 123 Atl. 543, affirmed 99 N.J. Eq. 433, 132 Atl. 923; Levin v. Nedelman,142 N.J. Eq. 769, 61 Atl. (2d) 76.
The several foregoing conclusions lead to the dismissal of the counterclaim and a judgment in favor of the plaintiff for the specific performance of the option agreement by the defendants-reversioners upon payment of the purchase price in conformity with the allegations of paragraph 11 of the complaint.