Riley *v.* Hodgkins.

JAMES RILEY

*v.*

ADDIE HODGKINS et al.

[Filed December 29th, 1898.]

1. The bill of complaint is sufficient if it state the legal effect of the complainant's claim; matters of defence not affirmatively appearing on the face of the bill, must be brought into the record by plea or answer.

2. A contract to convey lands set out in a bill of complaint will not on demurrer be held to be too vague in its identification of the property dealt with, where the elements of description are not manifestly applicable to different tracts, and they so point out its situation that it may be located, and so name or suggest its boundaries, that when the lot is located they may with reasonable certainty be ascertained on the ground.

Riley v. Hodgkins.

On demurrer to bill.

*Mr. Henry J. Melosh,* for the complainant.

*Mr. Charles B. Hughes,* for the demurrant.

GREY, V. C.

The bill in this cause is filed to obtain the specific performance of an alleged agreement to convey six lots in Jersey City. The title to the lots is stated by the bill to be in the defendants Addie Hodgkins, Mary S. Shumway and Hattie A. Millett, the heirs-at-law of one Benjamin B. Hamblin, deceased. The bill alleges that on January 31st, 1898, the complainant,

"through and by a certain John R. Foley, who at that time and prior thereto then and there was the agent of the said heirs-at-law of the said Benjamin B. Hamblin, purchased the said premises hereinbefore described, and by contract in writing, signed by the said John R. Foley, bought the said premises," &c.,

at the price of $1,500 of which, as an earnest, he paid $100 on account. A receipt was given, which is alleged to be the contract for sale, in the words and figures following:

"JERSEY CITY, January 31st, 1893.
"Received from J. Riley one hundred dollars on account of fifteen hundred dollars purchase price of lots 5, 6, 7, 8, 9 and 10 in Block (Old No. 6) New No. 953, and being located on the northwest corner of Spruce and Hudson County Public Road. Balance of purchase price $1,400, to be paid on delivery of good and sufficient deed free and clear of all encumbrances whatsoever. Title to pass at office of J. Riley, corner of Grove and Second streets, Jersey City, on Tuesday, March 1st, 1898, at one o'clock in the afternoon.
                                        "JOHN R. FOLEY,
                                            "per F. J. GUILFOYLE."

The bill further alleges that the complainant demanded performance of the "said agent of the said heirs," and that he refused to give the complainant a proper deed, &c., and tenders himself ready to pay the price according to the contract; that by the contract the title was to be free from all encumbrances, but that in fact municipal taxes on the premises for 1893, 1894,

1895, 1896 and 1897, with arrears of interest, remain unpaid; that on February 25th, 1898, the heirs of Hamblin did, by deed, convey the premises in question to the defendant Francis W. Mitchell, for the nominal consideration of $1; that this conveyance was made to defraud the complainant of his rights under the contract, and that Mitchell is not an innocent purchaser, and his title is subject to the complainant's equitable interest under the contract. The bill makes defendants the heirs-at-law of Hamblin, and Mitchell, their grantee, and prays a decree that the defendants shall perform the contract by conveying the premises to him clear of encumbrances, tenders himself ready to pay the balance of purchase-money, and further prays that interest be allowed him on his advance payment, and that if defendants do not free the premises from taxes, the amount of them may be deducted from the purchase-money, &c.; that he may have damages for failure to perform, and that the deed to Mitchell be declared to be void, &c.

The defendants all join in a demurrer to the bill and set forth a number of causes which, for clearness of reference, I state separately by number. They show for cause of demurrer:

"*First.* That no contract or agreement for the sale of the lands, tenements and hereditaments in said bill described, or any interest in or concerning them, or any memorandum or note thereof, was in writing signed by the parties in and by said bill sought to be charged therewith, or any or either of them, or by any other person thereunto by them or either of them lawfully authorized.

"*Second.* That it does not appear from said bill that John R. Foley, therein stated to have been the agent of the heirs-at-law of Benjamin B. Hamblin, deceased, was their agent to make a sale of the premises in said bill described or to make and sign a written contract or agreement or memorandum or note thereof in writing in behalf of said heirs.

"*Third.* That the alleged contract or agreement in said bill of complaint set forth does not purport to be signed by the person who in said bill is stated to have been the agent of the heirs-at-law of Benjamin B. Hamblin, deceased, but by some other person whose authority to sign the same is not set forth in said bill.

"*Fourth.* That the lands and premises described in the bill are not shown to be the same as those described in the contract set forth in the bill, and that the description in said alleged contract or agreement is too vague and indefinite to be capable of enforcement by this honoroble court."

The demurrer is to the whole bill, and each cause of demurrer alleged, extends to the whole bill.

The first cause, as it is framed, is in the nature of a speaking demurrer, and presents an issue of fact and not of criticism of the sufficiency of the bill in the law. It alleges as a fact that no contract was in writing signed by the parties sought to be charged, not that the bill shows no such contract. The proper function of a demurrer, and of the statement of a cause of demurrer, is to challenge the sufficiency in law of the matters stated in the bill. The demurrants cannot allege as a matter of fact that there was no contract in writing signed, &c., as a cause of demurrer, but must (if they desire to present that question) aver that the allegations of the bill do not show such a contract, and therefore they cannot be called upon to answer.

The second cause of demurrer exhibited addresses itself to the omission of the bill to allege that Foley, who is therein stated to have been the agent of the owners, was their agent to make a sale of the premises or to make and sign a written contract in their behalf.

It is the law of this state that an employment merely to make sale of land, does not of itself confer upon the employe the power to bind his principal by giving a written contract for the sale of the lands. *Morris* v. *Ruddy, 5 C. E. Gr. 236; Keim* v. *Lindley, 30 Atl. Rep. 1063; S. C. on appeal, sub nom. Lindley* v. *Keim, 9 Dick. Ch. Rep. 418.* The same rule prevails in England. *Hamer* v. *Sharp, L. R. 19 Eq. 108.* The questions presented have been whether the facts proven indicated the conference upon the agent of the power to bind his principal by contract to sell. In *Brinton* v. *Scull, 10 Dick. Ch. Rep. 755*, this court was of opinion that the proofs showed that such an authority was conferred, and was reversed because the court of appeals considered the proofs not sufficient. *Brinton* v. *Scull, 10 Dick. Ch. Rep. 491.* But these adjudications were pronounced upon the facts shown in the evidence, and not upon the sufficiency of the allegations in the pleadings. The substance of the allegations in this bill is, that the complainant, through Foley, who was the agent of the

owners, purchased the premises by contract in writing signed
by said Foley. The objection is that the allegation does not
specify the extent and character of his agency. There may,
under the law, be an agent who has authority to make a contract
for the sale of lands binding on his principal. When it is
alleged that the complainant purchased land from an agent, it
is fairly to be intended, until the contrary is averred, that the
agent was one of that class from whom a purchase could be
made. It certainly will not be assumed, without either allega-
tion or proof, that he had no such authority, yet this latter
assumption is necessary to sustain the cause of demurrer under
discussion, because to reach that result it must appear on the
face of the bill that the agent had no such authority. The
pleader is not called upon to state any more than the legal effect
of his own position, although when seeking to establish his right
he may be obliged to prove many facts not specifically pleaded.
Matters of defence must be brought into the record by the
defendants. The bill alleges that the complainant purchased
through the agent of the owners by a contract in writing signed
by him. Under this allegation he may be able to prove that
Foley was the general agent of the owners; in which case he
would have had full power to bind them by contract in writing.
If the defendants desire to raise the question of the extent of
Foley's agency, the introduction of a new fact is required, setting
up by way of plea or answer, the limitations of the agency, and
denying its sufficiency to justify the making of the contract.
It is only when the bill affirmatively defines the character of
Foley's agency, so that it thereby appears that he is a mere
broker, only authorized to find a purchaser, that this defect of
his power may be set up as a cause of demurrer.

The position is analogous to the case of a bill for the specific
performance of a contract for the sale of land when the com-
plainant states the agreement generally, without showing whether
it is in writing or not. Such an allegation is sufficient either in
equity or at law. Sir William Grant, master of the rolls, in
*Spurrier* v. *Fitzgerald, 6 Ves. \*555 ; 1 Ch. Pl. \*222.* In such
case it is upon the defendant to allege that the agreement is not

in writing. Until by plea or answer this fact is brought into the record, nothing appears which enables the court to apply the prohibitions of the statute.

The third cause of demurrer objects that the contract set forth in the bill does not purport to be signed by the alleged agent of the heirs, but by some other person whose authority to sign is not set forth in the bill. The copy of the contract set forth in the bill shows a signature "John R. Foley, per F. J. Guilfoyle." The preceding attending allegation of the bill is, that the complainant, "through and by Foley, who was at that time the, agent of the heirs of Hamblin, purchased the premises, and by, contract in writing signed by the said John R. Foley, bought the said premises." Then follows the copy of "said contract," showing the signatures as above stated. The demurrer must be taken to admit the facts stated in the bill to be true, and here there is a direct allegation that the contract was in fact signed by Foley. There is no allegation in the bill that it was signed by anyone else, but the copy had after. Foley's name the added words "per F. J. Guilfoyle." Nothing in the bill shows who Guilfoyle was, nor what relation he bore to Foley, nor that he had in fact signed Foley's name. The demurrer admits the statement of the bill that the contract was signed by Foley, to be true, and this admission is not overcome by the fact that the copy set out shows the added words "per F. J. Guilfoyle" without explanation or further statement. In the present condition of the pleadings, the question whether Foley did in fact sign the contract, cannot be disputed, nor can the questions of the sufficiency under the statute of frauds, of the signing of his name by another person, be presented.

The fourth cause of demurrer alleged is that the lands described in the bill are not shown to be the same as those referred to in the contract set out in the bill, and that the description in the contract is too vague and indefinite to be capable of enforcement.

The bill alleges that Hamblin died seized of certain lands and premises situate in Jersey City, which is stated to be in Hudson county, N. J., more particularly described on a map on file in Hudson county register's office, entitled "Map of property near

Reservoir, in Hudson City, belonging to the estate of John Ton-nele, deceased, by Levi W. Post, filed October 1st, 1868, are known and distinguished as lots number five (5), six (6), seven (7), eight (8), nine (9) and ten (10), in block numbered six (6), all as laid down on said map;" that one Foley was the agent of the heirs-at-law of Hamblin and that the complainant purchased the said premises hereinbefore described and by contract in writing, signed by the said John R. Foley, bought the said premises, &c. The bill then alleges that the context of the said contract is set forth as follows : and the contract is then inserted as above quoted, describing the premises as "lots 5, 6, 7, 8, 9 and 10, in block (old No. 6) new No. 953, being located on the northwest corner of Spruce and Hudson county public road."

There is nothing on the face of the bill which indicates that the lands referred to in the bill and in the contract are not the same. Lots at the "northwest corner of Spruce and Hudson county public road," in 1898, may be the same as those described as "near Reservoir, in Hudson City, belonging to the estate of John Tonnele, deceased," and stated to be laid down on a map filed in a public office in 1868. The lands in question are alleged to be the same premises and the demurrer admits it. The variance in the description appears to be the statement of different means of identifying the same premises. When the face of the bill does not show that the lot of which conveyance is sought is not the same as that agreed to be conveyed, and the description does not indicate that the vendor owns two or more lots to which the description might equally apply, the court cannot assume that they are different lots in order to make the bill demurrable.

Regarding the objection that the description in the contract is too vague and indefinite to be enforced, the contract is dated in Jersey City, and the description refers to certain numbered lots in a certain named block, designated by both its old and its new number, located on the northwest corner of Spruce and Hudson county public road. There is no mention that the lands lie in any specified township or county or state, save that they are on the Hudson county public road.

In *Robeson* v. *Hornbaker, 2 Gr. Ch. 60,* the omission to name county and state was held on demurrer to be no ground upon which to deny compulsory performance where the designation of the property in the agreement afforded other means of reasonable certainty of identification. Reference to old surveys, streams, and, I take it, to lots by number and corner on public roads and avenues, affords quite as certain means of identification as would descriptions by metes and bounds. The purposes and objects of the statute of frauds are effected when the writing identifies the land agreed to be sold with reasonable certainty. This may be by direct description of the lot itself or by reference to such details of its surroundings as may fairly be expected when applied upon the ground to fix with certainty its identity. No matter how precise may be the written description of lands, some parol proof will probably be required in applying the written description in locating the lands.

In *Price* v. *McKay, 8 Dick. Ch. Rep. 588,* the description was "a lot on Bramhall avenue, No. 470." This, together with the reference to the township of the vendor signing the contract, was held by Vice-Chancellor Emery to be sufficient to locate the property, and a demurrer was overruled.

In the case under consideration the name of the vendor is not recited in the memorandum, but there are other means of identification. The description in the contract names certain lots by number, in a certain block, designated by both its old and its new number, "being located on the northwest corner of Spruce and Hudson county public road." This description would naturally lead one seeking to find the lots mentioned to go in Hudson county to the northwest corner of Spruce and the Hudson county public road, and there to find the lots referred to by number and block. At this northwest corner the premises in question, numbered lots 5, 6, 7, 8, 9 and 10, lie within the block mentioned. This description would, I think, pass a title to these lands by devise in a will, and this has been accepted as a legitimate test of its sufficiency of identification under the statute of frauds. *Price* v. *McKay, ubi supra.* The memorandum in this case, as in *Price* v. *McKay,* is dated at a place, and the

Riley *v.* Hodgkins.

Massachusetts rule is cited to the effect that in a contract to convey lands, the naming of a place where the contract is made, raises a presumption that the lands are there situate.   *Mead* v. *Parke, 115 Mass. 413.*   Vice-Chancellor Emery found the other words of the memorandum in *Price* v. *McKay* to be sufficient to support a decree for performance, without considering whether the place named in the first or date line of the memorandum might be held to indicate that the property dealt with was there located.   I think the designation of the lots in the present case at the northwest corner of two streets, one of which is declared to be a public road in a named county, is a sufficiently certain specification of the location of the lands being dealt with. It may well be argued, however, that in naming a place in the memorandum, the maker of it considered himself as speaking from that locality, not only to indicate the place where he was giving a receipt for the purchase price, but also as covering the interior specifications by number of lot block and streets, of the location of the lands agreed to be sold.

The causes alleged are none of them sufficient to support the demurrer.  I will advise that it be overruled, with costs.