49 N.J. Super. 130 (1958)
139 A.2d 309
FRANCES J. CARLSEN, PLAINTIFF-RESPONDENT,
v.
ARNOLD G. CARLSEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 17, 1958.
Decided March 6, 1958.
*131 Before Judges PRICE, HANEMAN and SCHETTINO.
Mr. Aaron W. Nussman argued the cause for plaintiff-respondent (Mr. Walter P. Back, attorney).
Mr. Joseph R. Letcher argued the cause for defendant-appellant.
*132 The opinion of the court was delivered by SCHETTINO, J.A.D.
Appeal has been taken by defendant-husband from the portion of a judgment in favor of his wife which by its terms ordered defendant to convey the marital residence to plaintiff based upon defendant's oral promise to convey the family homestead property in return for a three-month period during which time plaintiff would not prosecute her divorce action and an attempt would be made to save the marriage and rectify the discord between the parties.
The facts surrounding the oral agreement are these. On June 26, 1956, from about 12 midnight to 1 A.M., defendant importuned plaintiff-wife to stop her suit for divorce scheduled to go to trial that morning. At that hour they reached no agreement. However, next morning in the corridors of the court house they agreed on a plan which subsequently was recited in open court as follows:
"Mr. Back: Mr. Christie representing Mr. Carlsen, the defendant and [ILLEGibLE WORD] representing the plaintiff, Mrs. Carlsen, have together with our parties done as much as possible to see if we can't save the marriage and the family.
Mr. Carlsen has stated that he was to convey to Mrs. Carlsen the real property which is located in Oradell on the corner of 
Mr. Carlsen: Third Street. Oradell Avenue and Third Street.
Mr. Back: Oradell Avenue and Third Street which is the marital res to Mrs. Carlsen and will also turn over one of the motor vehicles which I believe is a 1954 Pontiac to her and in her own name. In addition to that to pay all expenses in connection with, or, and maintenance of the home as heretofore and will give to her a sum sufficient, as will be agreeable to both parties, I know, and the matter will go off the calendar indefinitely, as your Honor indicated, and we can set it down for some future date in the fall.
The Court: Whenever you are ready let us know and if the matter works out satisfactorily then you may send in a Judgment of Dismissal.
Mr. Back: I might say that Mr. Christie and I have agreed upon a period of three months and at the end of that time we should know what can be done for these people. Is that fully understood, Mrs. Carlsen?
Mrs. Carlsen: Yes.
Mr. Back: And Mr. Carlsen?
Mr. Carlsen: Yes.
Mr. Back: And Mr. Christie?
Mr. Christie: Yes." *133 Plaintiff's action for a divorce was in fact forestalled for a period of more than six months in reliance upon the agreement and there is evidence of some attempts to reconcile their differences. No successful reconciliation took place.
Subsequent to this abortive attempt, plaintiff filed an amended complaint. In the first count she sued for divorce; in the second count, for a judgment to compel defendant specifically to perform his agreement to convey to plaintiff the marital home and; in the third count, for a judgment to compel defendant to transfer title to the automobile to plaintiff. Judgment was entered on all counts in favor of plaintiff. Defendant appeals only from that part of the judgment requiring him to convey to plaintiff title to the real estate.
The first legal issue raised by this appeal questions the sufficiency of the consideration to support the alleged oral contract. To be more specific, is the forbearance to press for trial by plaintiff for a three-month period a valid consideration to support the contract? Although there is a lack of unanimity among the authorities on this point, they tend to an affirmative answer. Barbour v. Barbour, 49 N.J. Eq. 429 (Ch. 1892), reversed on the ground that the evidence was insufficient to show the existence of an agreement, 51 N.J. Eq. 267 (E. & A. 1893); Bowden v. Bowden, 175 Cal. 711, 167 P. 154, L.R.A. 1918A, 380 (Sup. Ct. 1917); 1 Nelson, Divorce and Annulment (2d ed.) 1945, § 13.30, pp. 509, 510; 11 A.L.R. 277; 101 A.L.R. 1110; 11 Am. Jur. p. 259 § 11; 49 Am. Jur. p. 780 § 475; 149 A.L.R. 1012; but see, 1 Herr, Marriage, Divorce and Separation, p. 35, § 8 (1938); 11 N.J. Pract. (Herr, Marriage, Divorce and Separation), 8, § 645 (1950); 5 Williston on Contracts (rev. ed. 1937) § 1428, p. 3998. The postponement of an existing right to sue on behalf of the plaintiff would seem to be analogous to the principle enunciated by Mr. Justice Jacobs in De Caro v. De Caro, 13 N.J. 36, 44 (1953), insofar as the agreement not only forestalled but was an attempt to reconcile impending litigation in a family dispute, "a goal which is considered with high favor by the *134 courts," and that "inadequacy of consideration standing alone has often been said to be insufficient to avoid specific performance of an otherwise valid agreement." In Mack v. Mack, 87 Neb. 819, 128 N.W. 527, 528, 31 L.R.A., N.S., 441 (Sup. Ct. 1910) the court stated:
"If, therefore, the plaintiff was so situated that she had a cause of action against her husband for a divorce and in reliance upon the defendant's promise she waived her right * * * there was a consideration sufficient to sustain the contract."
Plaintiff in this case waived her right to an immediate trial and a possible judgment nisi for a period of three months on June 26, 1956. Such waiver was consideration sufficient to support a valid contract.
Appellant next raises the question of the applicability of the statute of frauds, R.S. 25:1-5 which states in part:
"No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person thereunto by him lawfully authorized:

* * * * * * * *
d. A contract or sale of real estate, or any interest in or concerning the same; * * *."
In Smithsonian Institution v. Meech, 169 U.S. 398, 408, 18 S.Ct. 396, 42 L.Ed. 793, 798 (1898), the Supreme Court said:
"* * * the statute of frauds was designed to prevent frauds, and * * * courts of equity will not permit it to be used to accomplish that which it was designed to prevent."
The English statute of frauds (29 Car. II, cap. 3) was entitled "An Act for Prevention of Frauds and Perjuries." In the recital its object was expressed as the "prevention of many fraudulent practices which are commonly endeavoured to be upheld by perjury and subornation of perjury." In Browne, Treatise on The Construction of *135 The Statute of Frauds (1857 ed.) in the "Introduction" the author states:
"* * * The latter phraseology is clearly the more accurate; for the statute does not aim directly to suppress fraud and perjury by imposing any new punishment in cases where they are proved to have been committed, but makes provision for excluding in certain cases such modes of proof as experience had shown to be peculiarly liable to corruption." (Emphasis added)
In Smith On the Law of Frauds (1907 ed.) we note:
"§ 311. Purpose of the statute. The purpose of the original statute is declared in the preamble to be `for prevention of many fraudulent practices which are commonly endeavored to be upheld by perjury and subornation of perjury.' A similar purpose is manifest from an examination of the several statutes in this country, taking into consideration the several provisions thereof. The object is sought to be accomplished not by declaring the several promises, agreements, contracts, deeds, assignments, etc., covered by the statutes, to be void, but by requiring the proof thereof, in actions to enforce the same, to be in writing and signed by the party sought to be charged, and thus prohibiting oral proof which was thought to be prolific of perjury or subornation of perjury * * *. The statute itself is clear and explicit, seldom requiring construction, but its application is the occasion of the greatest disorder, and uncertainty. The statute, neither by its terms, nor by construction, is directed to the illegality of the transactions, as such, but only to the methods of proof where proof is required. It is not prohibitory." (Emphasis added)
Similar language with reference to our statute was used by Mr. Justice Heher in Moses v. Moses, 140 N.J. Eq. 575, 584 (E. & A. 1947):
"The primary design * * * of the statute of frauds is to avoid the hazards attending the use of uncertain, unreliable and perjured oral testimony * * *. The reason of a law affords the key to its meaning."
Bearing in mind the intentions and restrictions of the statute of frauds, we consider its application to the specific admitted facts before us. An agreement was arrived at and stated in open court; each party and his and her respective attorney agreed to and understood the terms of the *136 agreement and the stipulations were taken down stenographically. The whole proceeding was under the guidance and supervision of the court and clearly the mischiefs anticipated by the statute of frauds could not enter this case. Smith v. Arnold, Fed. Cas. No. 13,004, 5 Mason 414, 420 (C.C. 1829), cited in Browne, Treatise on the Construction of the Statute of Frauds, supra, § 265.
Plaintiff-wife performed her part of the agreement. Her forbearance was for more than the promised period of three months. In Schanck v. Jones, 97 U.S. App. D.C. 148, 229 F.2d 31 (D.C. Cir. 1956), a divorced wife sought to impress a constructive trust upon proceeds of a condemnation award from property which had been jointly owned by her and her former husband prior to the husband's successful divorce action. Plaintiff alleged that defendant orally contracted with her that, if she would abandon her appeal in the divorce action, she would receive one-third of the award. Defendant refused to pay and the trial court granted summary judgment in his favor. The appellate court reversed stating (229 F.2d at page 32):
"Appellee urges that appellant's claim is barred by the statute of frauds. We think this is hardly the case in view of the fact that the alleged agreement, or oral contract, concerns personalty, i.e., money received from condemnation proceedings. But even if the contract were within the statute of frauds, it is well settled that the compromising of legal proceedings and the relinquishment of rights in connection therewith * * * are such part performance of an oral agreement as to except it from the operation of the statute of frauds."
See also 49 Am. Jur., Statute of Frauds, § 475, p. 780; 101 A.L.R. 1110.
We cannot overlook the importance of stipulations between litigants and the promotion of expeditious and complete justice by their enforcement provided no harsh or unfair contract results. In Perley v. Bailey, 89 N.H. 359, 199 A. 570, 571 (Sup. Ct. 1938), we find:
"The entry of a decree or judgment upon a parol stipulation made by the parties or their counsel in open court has long been usually *137 a matter of course. [Citations omitted] It is not the intention of the statute of frauds to affect such stipulations made in court and subject to the court's supervision and control."
Since stipulations in court made by attorneys when acting within the scope of their authority are enforceable against their clients certainly, stipulations by attorneys and their clients before the court and in the record must, a fortiori, be enforceable. The least that can be said in this regard is that the intent of the statute of frauds is not forsaken in view of the fact that the proof of the existence of the contract is a matter of court record and is not disputed. We feel that defendant is now estopped by his actions from setting up the special defense. Hygrade Cut Fabric Co. v. United States Stores Corporation, 105 N.J.L. 324, 329 (E. & A. 1929); Kupper v. Barger, 33 N.J. Super. 491, 494 (App. Div. 1955); Gelsmine v. Vignale, 11 N.J. Super. 481, 485 (App. Div. 1951); Trenton Oil Co., Inc. v. Dries, 30 N.J. Super. 122, 128 (Law Div. 1954).
Authorities elsewhere indicate that the statute of frauds is not a bar to specific performance of oral agreements involving real estate when the person pleading the statute has taken a step in the cause. For example, in Robertson v. Smith, 94 Va. 250, 26 S.E. 579, 580 (Sup. Ct. App. 1897), the court says:
"Judicial sales made by chancery courts through their commissioners are not within the statute of frauds, and they are binding upon the bidder or purchaser without any written contract or memorandum of sale signed by him or his agent. By bidding he subjects himself to the jurisdiction of the court, and, in effect, becomes a party to the proceedings in which the sale is made, and may be compelled to complete his purchase by the process of the court."
See also 49 Am. Jur., § 226, p. 550.
In this case no possibility exists of establishing fraud by "perjury and subornation of perjury." The statute should not be permitted to operate as a bar to the performance of appellant's contractual obligation which was plainly in the furtherance of preserving the marital bonds.
*138 Additionally, we feel the respondent should prevail under the doctrine of equitable fraud. Relying upon appellant's oral promise, respondent changed her position, gave up a possible immediate right to a judgment nisi and cannot practicably be restored. Money damages cannot be ascertained. It would be a virtual fraud to permit the defense of the statute of frauds. Townsend v. Vanderwerker, 160 U.S. 171, 184, 16 S.Ct. 258, 40 L.Ed. 383, 387 (1895); Brewood v. Cook, 92 U.S. App. D.C. 386, 207 F.2d 439 (D.C. Cir. 1953); 4 Pomeroy, Equity Jurisprudence (1941 ed.), § 1409, p. 1057. In Cauco v. Galante, 6 N.J. 128, 138 (1951), Mr. Justice Burling stated:
"* * * Where the Statute works the intolerable mischief of operating as a fraud the Statute should be no bar to the granting of relief to one who has, in good faith, so performed the parol agreement as to irretrievably change the situation of the parties to the disadvantage of the plaintiff."
See also Edwards v. Wyckoff Electrical Supply Co., 42 N.J. Super. 236, 242 (App. Div. 1956).
Appellant further contends that the terms of the agreement are indefinite and therefore so uncertain that the agreement should not be enforced. At oral argument, counsel pointed out that a deed drafted by plaintiff's attorney contained the description of the homestead property and three vacant lots fronting on another street, that such a deed was an admission that the amount of the real estate involved was uncertain and that plaintiff  through her attorney  in effect admitted this to be so. The succinct answer was that the amended complaint by its second count contained a description of the homestead premises and of no other real estate, that such description was consistent with the premises referred to in court by defendant's statement quoted above from the record: "in Oradell on the corner of  Mr. Carlsen: Third Street. Oradell Avenue and Third Street." and that defendant also admitted at trial that the homestead premises were the ones intended to be conveyed.
*139 In Matlack v. Arend, 2 N.J. Super. 319, 327 (Ch. Div. 1949), Judge Jayne stated:
"Reasonable certainty in the ascertainment of the lands agreed to be conveyed is all that is required. Bateman v. Riley, 72 N.J. Eq. 316, 73 A. 1006. A description evidenced merely by a street number may in view of the surrounding circumstances be sufficiently definite to identify the land. Riley v. Hodgkins, 57 N.J. Eq. 278, 41 A. 1099; Claphan v. Barber, 65 N.J. Eq. 550, 56 A. 370; Franklin v. Welt, 98 N.J. Eq. 602, 131 A. 585; Bernstein v. Rosenzweig, 1 N.J. Super. 48, 62 A.2d 147. I recall a specific performance suit in which the property was described in the contract as the `fifth house from the corner.' Friedman v. Gold, 105 N.J. Eq. 177, 147 A. 377. It seems to have been contemplated that `the present description of these premises' (deed descriptions) would be ascertained aliunde."
See also Judge Jacobs' opinion in Bernstein v. Rosenzweig, 1 N.J. Super. 48, 53 (App. Div. 1948) and the cases therein cited.
Affirmed.