**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3198-23

MYRTLE PACKAGING, LLC,

    Plaintiff-Respondent,

v.

BERKS PLANT DESIGN &
MAINTENANCE, INC.,[1]

    Defendant,

and

EDWARD F. LEH,[2]

    Defendant-Appellant.

_____

        Argued September 30, 2025 – Decided October 16, 2025

        Before Judges Gilson, Firko, and Vinci.

---

[1] Defendant Berks Plant Design & Maintenance, Inc. (Berks) was dismissed from the case without prejudice due to a Chapter 7 bankruptcy petition being filed pursuant to 11 U.S.C. § 362(a) and is not participating in this appeal.

[2] Defendant Edward F. Leh is also referred to as Edward F. Leh, III in the record.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0719-19.

Mark L. Rhoades argued the cause for appellant (Sklar Law, LLC, attorneys; Mark L. Rhoades, on the briefs).

Beau C. Wilson argued the cause for respondent (Hyland Levin Shapiro LLP, attorneys; David R. Dahan, of counsel and on the brief; Beau C. Wilson, on the brief).

PER CURIAM

Defendant Edward F. Leh appeals from the Law Division's May 2, 2024 order entering final judgment against him and challenges an April 4, 2024 order striking his answer to the amended complaint and restated counterclaims. We affirm both orders.

I.

We summarize the pertinent facts and procedural history, which are derived from the record. On November 20, 2019, plaintiff Myrtle Packaging, LLC (Myrtle) filed a complaint against defendant Berks, asserting breach of contract, breach of warranty, negligence, violations of the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -229, common law fraud, and acts, actions, and omissions resulting in losses and damages.

Myrtle operates a food production and packaging plant in Millville. Berks, a Pennsylvania corporation, delivered, constructed, serviced, and

2

installed equipment for Myrtle's newly constructed Millville plant. In 2016, Myrtle contracted with Berks to provide a "turnkey bottling and packaging line." A turnkey line is a production system designed to control the entire manufacturing and distribution process, including assembly, quality control, and delivery. Myrtle wanted to optimize production at its Millville plant to support the growing demand for its primary product, "Hank's Sauce."

According to Myrtle, Berks's proposal included setting up and running the line at its facility in Pennsylvania before installing the line at Myrtle's Millville plant. Berks's proposal specified that the system's components would be "brand new" and "never removed from [the] original shipping skids." Instead, Myrtle claimed the equipment delivered was not new as promised but was "fully refurbished" old equipment that was not in proper working order and required replacement and repair by Myrtle.

Myrtle alleged it incurred "significant costs" to obtain equipment and components from other sources, and additional labor and repair costs for substitute contractors. Myrtle claimed Berks made "material misrepresentations" about the quality and condition of the equipment. Myrtle alleged Berks's actions caused delays in production and required Myrtle to employ a staffing service to fill in bottles by hand, rather than the automated

A-3198-23

process Berks failed to properly provide and install. Relying on Berks's representations, Myrtle paid Berks in excess of $500,000. Myrtle sought compensatory damages, treble damages, attorney's fees, and costs of suit.

Berks filed an answer and counterclaim alleging breach of contract and, alternatively, unjust enrichment. Berks demanded judgment against Myrtle in the amount of $71,731.44 for equipment and services provided but not paid for. Myrtle filed an answer to the counterclaim.

On December 1, 2021, Myrtle filed an amended complaint—the operative pleading here—to add Leh as a defendant and asserted personal claims against him. Myrtle alleged Leh is the "[p]resident and/or agent, employer, salesman, partner, officer, director, stockholder and/or associate of Berks." Myrtle contended Leh made "several false affirmative statements and promises regarding the quality, condition[,] and functionality" of the proposed line and equipment for the line to Myrtle's president.

Myrtle claimed Leh stated the equipment would be "brand new," "new," or "like new," and the line would be fully "designed, constructed and tested" at Berks's facility so it could be "easily delivered and operational upon delivery" as a turnkey line. The amended complaint alleged Leh stated he would provide

A-3198-23

Myrtle "Hobart"[3] kettles but delivered inferior "Brew-Bev" kettles, which constituted a "bait and switch" by Leh. Myrtle alleged defects in various equipment and inferior "aftermarket parts," which demonstrated Leh's "fraud" being perpetrated upon it. Myrtle alleged Leh misrepresented that Berks was using the "A-Team" for the installation process when in fact Berks only had one team. The ad damnum clause in the amended complaint requested punitive damages in addition to the relief sought in the original complaint.

After Berks and Leh answered Myrtle's amended complaint on December 17, 2021, the parties engaged in discovery. Myrtle served an expert report authored by Jim Goldman of Global Innovation Professionals LLC.[4] Goldman is a mechanical engineer and a certified packing professional. He opined that Myrtle sustained $13,056,984 in damages as a result of defendants' misrepresentations, which led to additional repairs, purchasing more equipment, and requiring extra staff. Goldman stated that the turnkey line failed to meet Occupational Safety and Health Administration, Food and Drug Administration, and Global Food Safety Initiative standards. Myrtle also served a report

---

[3] Leh incorrectly referred to "Hobart" kettles as "Hubbert" kettles in his invoice to Myrtle.

[4] Myrtle incorrectly referred to "Global Innovation Professionals LLC" as "Global Innovation Professions LLC" in its merits brief.

A-3198-23

authored by Michael A. Saccomanno, a certified public accountant with Marcum Accounts and Advisors. Saccomanno opined that Myrtle sustained $8,764,275 in damages.

On May 17, 2023, Berks filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court in the Eastern District of Pennsylvania. On June 6, 2023, the court dismissed Myrtle's claims against Berks and Leh without prejudice pursuant to the automatic stay provision set forth in 11 U.S.C. § 362(a). On July 6, 2023, the court noted its error in dismissing Leh, who had not filed an individual bankruptcy petition, and reinstated the amended complaint as to Leh only in his individual capacity.

Two months after the discovery end date had passed, on November 8, 2023, Leh's second counsel, Offit Kurman, moved to withdraw from representing him arguing "good cause" pursuant to the Rules of Professional Conduct. Leh's counsel certified to Leh's inability to fund the litigation, pay experts, and "his general lack of responsiveness to case-related matters." Despite the pending motion, Offit Kurman continued representing Leh relative to settlement negotiations and a consent order, which was executed and filed by the court on January 25, 2024. Relevant here, the consent order provided that Leh would appear in person at the motion to withdraw hearing, pre-trial

6

conference, and trial, unless he provided "an acceptable signed and current letter from his actual surgeon(s) that justifies any alleged inability to appear in person."

Specifically, the consent order provided that the letter

> shall also include (i) a schedule of any future medical procedures for . . . Leh, (ii) a timetable for when . . . Leh can appear in [c]ourt in person and remotely for any future proceedings within the next three (3) months and (iii) any alleged reasons why . . . Leh cannot participate in any future [c]ourt proceedings remotely such as via Zoom.

The consent order also provided that if Leh failed to appear in person or remotely for the motion to withdraw, the pre-trial conference, failed to timely submit any pre-trial exchange of information pursuant to Rule 4:25-7, or failed to appear in person for trial, and failed to timely provide a "signed and current letter from his actual surgeon(s)," which the court determines is "acceptable," then upon a certification from plaintiff's counsel, Leh's answer to the amended complaint and restated counterclaims "shall be stricken." The consent order stated judgment could be entered in favor of plaintiff and against Leh in accordance with Rule 1:2-4.[5]

_____

[5] Rule 1:2-4(a) provides in pertinent part:

The matter did not settle. On March 28, 2024, after being adjourned at Leh's request, the court conducted oral argument on his counsel's motion to withdraw. Leh failed to appear in person or remotely after being noticed. The court noted neither it nor Leh's counsel had received an update regarding his medical condition or inability to attend or participate in the hearing. The court also unsuccessfully attempted to reach Leh by phone that day. The court granted the motion to withdraw and concluded Leh was "just trying to avoid this case" and that he violated the terms of the consent order. The court explained the case was "going around and around" and described the difficulties caused by Leh's delays, absences, and lack of communication.

The court highlighted that the March 28, 2024 hearing—which Leh did not attend—had already been adjourned at Leh's request from February 5, 2024.

if without just excuse or because of failure to give reasonable attention to the matter, no appearance is made on behalf of a party on the call of a calendar, on the return of a motion, at a pretrial conference, settlement conference, or any other proceeding scheduled by the court, or on the day of trial, or if an application is made for an adjournment, the court may order any one or more of the following . . . (c) the dismissal of the complaint, cross-claim, counterclaim or motion, or the striking of the answer and the entry of judgment by default, or the granting of the motion; or (d) such other action as it deems appropriate.

The court acknowledged that Leh's medical procedures were a large source of the delays but noted that many of Leh's failures to provide notice or communicate were unrelated to his medical issues. Ultimately, the court concluded Leh was using his medical issues as an excuse to purposely delay the litigation and avoid a judgment being entered against him.

The court concluded the case has "been delayed enough" and granted the motion to withdraw. The court also struck Leh's answer to the amended complaint and restated counterclaims pursuant to Rule 1:2-4, but held Leh's pleadings were "subject to reinstatement" upon a motion being filed if he complied with the consent order. A proof hearing was scheduled for April 29, 2024.

A few hours after the March 28, 2024 hearing ended, Leh provided an email and a surgeon's letter to his then former counsel, Offit Kurman, which stated the following:

> . . . [LEH WAS SEEN TODAY]. HE UNDERWENT SURGERY FOR A SEVERE CHRONIC DISEASE ON [DECEMBER 29, 2023] AND CONTINUES TO HEAL WOUNDS FROM THIS. WITHIN A REASONABLE DEGREE OF MEDICAL CERTAINTY, I ESTIMATE HE WILL NOT BE FULLY HEALED FOR AT LEAST [THREE] MORE MONTHS AND CANNOT RULE OUT THE NEED FOR ADDITIONAL SURGERY. HE WILL BE SEEN BACK IN JUNE/JULY.

9

Former counsel forwarded Leh's email and surgeon's note to the court and plaintiff's counsel. The next day, March 29, 2024, Myrtle's counsel submitted a proposed order to strike pleadings and set proof hearing to the court with a cover letter. Leh was copied on the cover letter and proposed form of order, which was sent to him via email, Federal Express, certified mail, return receipt requested, and regular mail to his home and Berks's address. Leh did not object to the form of the order. Five days later, on April 4, 2024, the court entered the order.

The April 4, 2024 order provided that entry of judgment on liability was entered in favor of plaintiff and against Leh on all claims set forth in the amended complaint. The order also stated that the proof hearing was limited to damages only, and plaintiff was not required to offer expert testimony but could introduce its expert reports into evidence. The order directed that Leh was to be served with a copy of the order within three days after receipt by plaintiff's counsel via email, and either overnight delivery or certified mail, return receipt requested, at his last known address.

Myrtle's counsel served Leh with the order as directed by the court. Leh never moved to reinstate his answer to the amended complaint and his restated

counterclaims. He also never moved to vacate the April 4, 2024 order or the consent order.

The proof hearing proceeded on April 29, 2024. Leh was invited to participate in person or virtually but did not. At the onset of the proof hearing, the court acknowledged receipt of Leh's surgeon's letter dated April 16, 2024. The surgeon's letter described Leh's open wounds stemming from a March 19, 2024 procedure. The court summarized the surgeon's letter on the record and noted Leh had "significant surgery" in December 2023 and was "doing well."

According to the letter read into the record, Leh was under the care of a "chronic pain specialist." The letter noted "[s]itting for long periods of time is unreasonable." The court stated the April 16, 2024 letter did not state that Leh could not appear virtually and did not ask for an adjournment. The surgeon's letter referenced a subsequent procedure Leh would need to undergo in June or July 2024. The surgeon's letter was sent to the court by counsel for Berks, who was then representing Leh in his personal capacity.

The court proceeded with the proof hearing. Myrtle's principals Pietro Pittaluga and Joshua Jaspan testified. Pittaluga, Myrtle's president, testified about Leh's misrepresentations regarding his credentials and the quality of Berks's products and services that induced Myrtle to enter the contract. In

particular, Pittaluga detailed that Leh held himself out as a certified professional engineer during negotiations, on LinkedIn, and on every invoice. After further research, Pittaluga explained he learned and Leh admitted that he never finished college, and he was not a professional engineer.

Jaspan, Myrtle's chief financial officer, testified about the nature of the contract entered between the parties, Berks's failure to properly perform under the terms of the contract, and the factual underpinnings of Myrtle's expert reports. The court also considered plaintiff's expert reports.

The court found the witnesses were "believable," and the expert reports were "credible," but accepted the lower figures in the Marcum report. In its decision, the court reasoned that Goldman is an engineer and Marcum is an accountant, thereby making the Marcum report "more believable" in its calculation of damages. The court noted the documents moved into evidence comported with the testimony. The court determined that Leh "made material misrepresentations" and committed "fraud" against Myrtle. In the court's view, Leh "cleverly" used his father's name and designation to hold himself out as a professional engineer.

The court stated Leh was "obviously . . . selling a bill of goods that he could not . . . deliver." The court emphasized these fraudulent acts were

12

"perpetrated directly by . . . Leh," and constituted violations under the CFA. The court trebled the damages and awarded Myrtle attorney's fees in the amount of $250,000 under the CFA. On May 2, 2024, the court entered final judgment in favor of Myrtle and against Leh in the amount of $26,542,825. This appeal followed.

On appeal, Leh raises two issues for our consideration: (1) the court erred when it proceeded with the proof hearing on April 29, 2024, after it had received two notes from Leh's surgeon indicating Leh was unable to participate in court proceedings; and (2) the court erred in entering the January 25, 2024 consent order given there is no "record evidence" that Leh consented to the relief granted therein.

II.

"The decision to dismiss a case or sanction parties for failure to appear . . . falls within the discretion of the trial judge." Kornbleuth v. Westover, 241 N.J. 289, 300 (2020). "A court abuses that discretion when the decision to impose sanctions 'is made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Id. at 300-01 (alterations in original) (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)). Rule 1:2-4(a) provides, "[I]f without just excuse or because

of failure to give reasonable attention to the matter, no appearance is made on behalf of a party on the call of a calendar . . . or any other proceeding scheduled by the court . . . the court may order . . . (c) the dismissal of the [party's pleadings]."

"The trial court has an array of available remedies to enforce compliance with a court rule or one of its orders." Williams v. Am. Auto Logistics, 226 N.J. 117, 124 (2016) (quoting Gonzalez v. Safe & Sound Sec. Corp., 185 N.J. 100, 115 (2005)). "[W]hen a plaintiff fails to honor a notice . . . , he subjects himself [or herself] to the list of sanctions referenced in Rule 1:2-4(a), one of which is dismissal of the complaint." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 406 (2009) (quoting Gonzalez, 185 N.J. at 115). "In assessing the appropriate sanction for the violation of one of its orders, the court must consider a number of factors, including whether the plaintiff acted willfully and whether the defendant suffered harm, and if so, to what degree." Williams, 226 N.J. at 128 (quoting Gonzalez, 185 N.J. at 115).

"Because the dismissal of a [parties'] cause of action with prejudice is a drastic remedy, it should be invoked sparingly, such as when the plaintiff's violation of a rule or order evinces 'a deliberate and contumacious disregard of the court's authority.'" Gonzalez, 185 N.J. at 115 (quoting Kosmowski v. Atl.

14

City Med. Ctr., 175 N.J. 568, 575 (2003)).  "When the vindication of the court's authority standing alone is not at issue, then the prejudice suffered by the [other party] also must enter into the calculus in determining the appropriate sanction." Id. at 116; see also Connors v. Sexton Studios, Inc., 270 N.J. Super. 390, 393 (App. Div. 1994) (considering the available sanctions established by Rule 1:2-4 and stating "the dismissal remedy, especially, as here, a dismissal with prejudice, should not be invoked except in the case of egregious conduct on the part of a plaintiff, and should generally not be employed where a lesser sanction will suffice").

A.

Leh first argues that the court erred when it proceeded with the April 29, 2024 proof hearing after receiving two notes from Leh's surgeon as required by the January 25, 2024 consent order.  Leh maintains the two surgeon's notes indicated that he was unable to participate in court proceedings.  Leh concedes that he did not provide the required note prior to the March 28, 2024 argument on the motion to withdraw but did provide the note to his then former counsel Offit Kurman later that day.  Leh contends the court acknowledged he provided a second note from his surgeon and that it was sent to Berks's counsel the Friday before the proof hearing.

Myrtle counters that Leh did not comply with the consent order. Myrtle argues that paragraph four of the consent order specifies that oral argument on the motion to withdraw was scheduled for February 5, 2024, and trial was to commence on March 4, 2024, which was intended to give Leh sufficient time to search for and engage new counsel. As stated, the motion to withdraw was adjourned until March 28, 2024, at Leh's request. Myrtle asserts the surgeon's letter stating Leh is "doing well" was insufficient and failed to meet the consent order's requirements.

Here, the consent order expressly required Leh's appearance at the motion to withdraw hearing, the pre-trial conference, and trial, or else he had to provide a valid excuse for his absence. The consent order specifically required "an acceptable signed and current letter from [Leh's] actual surgeon(s) that justifie[d] any alleged inability to participate in person or, in the alternative, remotely." Moreover, such letter was to include a schedule of future medical procedures, remote availability, a timeline for in-person availability, and set forth reasons why Leh could not appear virtually. Here, the surgeon's letter failed to comply with the explicit consent order terms.

We discern no basis in the record to disturb the court's decision to strike Leh's pleadings. The court enforced the terms of the consent order. Leh was

represented by counsel when the consent order was negotiated and submitted to the court for entry. At no time did Leh challenge the validity or enforceability of the consent order by moving for reconsideration of the interlocutory order.[6] Leh also never moved to modify the consent order.

We conclude the court did not err or abuse its discretion in striking Leh's pleadings pursuant to Rule 1:2-4 and entering judgment against him and in favor of Myrtle. As the court aptly pointed out, the two surgeon's notes do not detail why Leh could not appear in court or virtually and did not provide a timetable for his availability. Consequently, Leh failed to provide a valid and timely excuse to the court, and therefore, his failure to appear constituted a violation of the terms of the consent order.

Leh's reliance on our decision in Connors v. Sexton Studios, Inc., for the proposition that "[p]rocedural dismissals . . . are not favored," is misguided. 270

---

[6] Rule 4:42-2(b) provides:

> In the absence of a direction authorized by paragraph (a), any order or form of decision which adjudicates fewer than all the claims as to all the parties shall not terminate the action as to any of the claims, and it shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice. To the extent possible, application for reconsideration shall be made to the trial judge who entered the order.

N.J. Super. 390, 395 (App. Div. 1994). In <u>Connors</u>, we reviewed the trial court's decision to dismiss the plaintiff's claim with prejudice when the plaintiff arrived in court a few minutes late after experiencing traffic and parking delays. <u>Id.</u> at 392-95.

Moreover, <u>Connors</u> is distinguishable from this case in two respects. <u>Ibid.</u> First, the court here acted pursuant to a consent order entered after Leh delayed the start of trial by failing to appear on several occasions rather than merely arriving minutes late once. <u>Ibid.</u> Second, the court determined Leh's conduct was a willful and egregious effort to avoid litigation in order to render himself judgment proof. We conclude that Leh agreed to all of the provisions of the consent order he now challenges. His claims are without merit.

## B.

Next, Leh argues the court improvidently entered the consent order because there is no "record evidence" he consented to the relief granted therein. Leh maintains there is "no indication" he ever consented personally to the relief granted by virtue of the consent order and this constitutes reversible error. Leh contends at the time the consent order was consented to by Offit Kurman, while its motion to withdraw was pending and based on these circumstances, the

A-3198-23

matter should be remanded for a determination as to whether Leh actually gave his consent to entry of the consent order.

"A judgment or order entered with the consent of the parties is ordinarily not appealable for the purpose of challenging its substantive provisions." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.2.3 on R. 2:2-3 (2026). The comment to Rule 2:2-3 further states that "[a]lthough relief from a consent judgment is not obtainable by appeal, recourse may be sought pursuant to R[ule] 4:50-1." Ibid.; see also Hurwitz v. AHS Hosp. Corp., 438 N.J. Super. 269, 292 (App. Div. 2014) ("A consent order is, in essence, an agreement of the parties that has been approved by the court").

We have recognized "that an order consented to by the attorneys for each party is ordinarily not appealable." Jacobs v. Mark Lindsay & Son Plumbing & Heating, 458 N.J. Super. 194, 205 (App. Div. 2019) (quoting Winberry v. Salisbury, 5 N.J. 240, 255 (1950)). "This is because [Rule 2:2-3] allowing an appeal as of right from a final judgment contemplates a judgment entered involuntarily against the losing party." N.J. Schs. Constr. Corp. v. Lopez, 412 N.J. Super. 298, 308-09 (App. Div. 2010). Here, the consent order provided a measure of repose in this protracted litigation. Leh's arguments are unavailing.

19

Finally, Leh's argument that his former attorney's actions did not bind him to the consent order was expressly rejected in Jennings v. Reed, 381 N.J. Super. 217, 230-31 (App. Div. 2005). In Jennings, we held it is "well settled" that "stipulations . . . made by attorneys when acting within the scope of their authority are enforceable against their clients." Id. at 230 (emphasis omitted) (citing Carlsen v. Carlsen, 49 N.J. Super. 130, 137 (App. Div. 1958)).

The policy of our courts is to recognize acts by attorneys "as valid and presumptively authorized." Id. at 231. Moreover, the party asserting the lack of authority must sustain "a heavy burden to establish [his or her] attorney acted without any kind of authority" in agreeing to court related matters. Ibid. Leh has failed to prove Offit Kurman lacked either actual or apparent authority to agree to the terms of the consent order.

Leh attacks the consent order and feigns ignorance of it. But the record demonstrates Offit Kurman documented all of the notices it gave to Leh and conversations with Leh about the consent order. Saliently, it is unrefuted that Leh's former counsel spoke to Leh two days before the March 28, 2024 motion to withdraw hearing. Thus, Leh was aware of the consent order's terms and his obligations arising thereunder. Leh may not now appeal from the consent order when he was clearly made aware of it. Leh could have also moved to vacate the

20

judgment under Rule 4:50-1,[7] and as part of that motion, he could have also sought to challenge the other interlocutory orders. Leh's belated allegation that he was unaware of the consent order is belied by his own conduct.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[7] Rule 4:50-1 provides for "relief from judgment or order." The Rule states:

> On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R[ule] 4:49; (c) fraud (whether heretofore, denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

A-3198-23